IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-1396-RBJ-KLM

FEDERAL TRADE COMMISSION, and
STATE OF COLORADO, *ex rel.*
JOHN W. SUTHERS, ATTORNEY GENERAL

      Plaintiffs,

v.

RUSSELL T. DALBEY;
DEI, LLLP;
DALBEY EDUCATION INSTITUTE, LLC;
IPME, LLLP; and
CATHERINE L. DALBEY

      Defendants.

---

## Order Regarding Sanctions

---

Defendants have asked the Court to dismiss the claims of the Federal Trade Commission as a sanction for three alleged incidents of professional misconduct by FTC counsel occurring respectively in 2009, 2010 and 2011. These issues were first raised on May 4, 2012 in a motion to dismiss the FTC's claims [docket #183]. The Court denied the motion, mistakenly assuming that the FTC's subsequent motion for summary judgment rendered it moot. Defendants moved for reconsideration, which the Court granted. The matter was heard during a hearing on pending motions held on January 11, 2013. The Court finds that improper conduct did occur with respect to the 2010 and 2011 incidents, but that substantially less severe sanctions are appropriate.


**FACTS**

1

The nature and background of this case are discussed in an order on pending motions that is simultaneously being issued today.  It is unnecessary to repeat those here.  The facts pertinent to the three challenged incidents are discussed in the context of each separate incident.

## CONCLUSIONS

### 1.  **False Identity; Surreptitious Calls**.

In early 2009, two years before this case was filed, an FTC investigator, posing as a prospective customer, place some 24 calls to employees of the defendants and surreptitiously recorded the conversations.  This investigatory practice has been authorized by the Commission and delegated to the Bureau of Consumer Protection.  Plaintiffs represent that this practice has been used in more than 350 cases.  In this instance an investigator, Bonnie McGregor, was authorized by a deputy in the Bureau of Consumer Protection, Daniel Kaufman, to conduct and record the calls.

It is undisputed that this was done with the knowledge and approval of the FTC's lead counsel in this case, David P. Frankel.  Defendants contend that in doing so, Mr. Frankel violated Colorado ethical rules.  Specifically, they contend that this practice is contrary to Ethics Opinion 112, issued by the Colorado Bar Association Ethics Committee on July 19, 2003.  In that Opinion the Committee interpreted Rule 8.4(c) (a lawyer may not engage in conduct involving dishonesty, fraud, deceit or misrepresentation) and Rule 5.3 (a lawyer may not direct conduct by a non-lawyer that would violate the conduct rules) and applied those rules to surreptitious recordings of conversations.  Specifically, "[b]ecause surreptitious recording of conversations or statements by an attorney may involve an element of trickery or deceit, it is generally improper for an attorney to engage in surreptitious recording even if the recording is legal under state

law." Opinion 112, Syllabus.  Likewise, the attorney cannot direct or authorize an agent to do so.  *Id.*  There are two exceptions, neither of which applies here.

In response FTC attorney Elizabeth Tucci, who is not involved in this case and appeared at the January 11 hearing only with respect to the three ethics and sanctions issues that are the subjects of this order, argued that (1) Rules 8.5(a) and (b) of the Colorado Rules of Professional Conduct provide that if the conduct of a lawyer who is not admitted in this jurisdiction does not involve a matter pending before a tribunal, the rules of the jurisdiction in which the lawyer's conduct occurred apply unless the predominant effect of the conduct is in a different jurisdiction, in which case that jurisdiction's rules apply; (2) Mr. Frankel is licensed to practice in D.C. and Florida, both of which authorize undercover calls, and he followed the ethical rules of those jurisdictions; (3) Mr. Frankel had a good faith belief that the predominant effect of the calls in 2009 occurred in D.C. where he works and was participating in the investigation; and (4) the Attorney General's Office of the State of Colorado does not believe that undercover tape recordings by law enforcement during the course of an investigation are impermissible.

Concerning the latter argument, the Assistant Attorney General who represents the State of Colorado in this case advised the Court that, in his opinion, it is not settled in Colorado that surreptitious recordings by the government are improper in civil cases.  Surreptitious recording has been approved in consumer litigation by the current and the previous three Attorneys General, pursuant to a "law enforcement exception."  He argued that Colorado state courts have admitted undercover recordings, although no specific decisions were provided.  Counsel referred to Ethics Opinion 96, as revised on March 17, 2012.  That opinion cites, for example, *United States v. Ryans,* 903 F.2d 731, 740 (10th Cir. 1990), *cert denied,* 498 U.S. 855 (1990), which held that the use of an informant on instructions from a prosecutor surreptitiously to record

incriminating conversations by suspects does not violate Disciplinary Rule 7-104(A)(1).  Ethics

Opinion 96 does not mention Ethics Opinion 112 or expressly carve out an exception for

surreptitious recording by regulatory agencies.

The Court concludes that it does not have to decide in this case whether Ethics Opinions

96 and 112, or any other applicable rule or law, preclude surreptitious recording of telephone

calls by a government investigator during the course of the investigation of suspected consumer

fraud.  First, having heard the entire presentation at the hearing, including the statements of Mr.

Frankel, I find that the recordings were made in the good faith belief that the practice was not

contrary to applicable rules of professional conduct when the calls were made.  Second, the

Commission did not use the surreptitiously recorded calls in their summary judgment papers, and

it has no intent to use them at trial.  There is no prejudice to the defendants.  If defendants

continue to believe that an ethical violation has occurred, they can and should communicate their

concern to the Office of Attorney Regulation Counsel, State of Colorado, which is an appropriate

forum to determine whether an ethical breach has occurred and, if so, what sanction should be

imposed.  So far as the case before the Court is concerned, however, I find and conclude that no

further action by the Court with respect to the calls is necessary.

**2.  Errata Sheets to Hastak Deposition**.

On August 1, 2010 defendants took the deposition of Dr. Manoj Hastak, one of two

experts retained by the FTC to conduct consumer surveys.  Dr. Hastak testified that he rejected a

certain survey model based upon information concerning defendants' refund practices that

attorney Frankel provided to him in 2009.  Ironically, the information was that, although

defendants had a policy allowing refund claims within 30 days, defendants actually honored

refund claims after the 30 day deadline.  After the deposition defense counsel Neil Goteiner did

some research that convinced him that Mr. Frankel could not have known about the more generous refund practice in 2009. Mr. Goteiner asked FTC counsel to provide documentation that would show when Mr. Frankel obtained the information. No such documentation was provided. Rather, on August 18, 2010 FTC staff produced a "Partial Errata Sheet" in which Dr. Hastak changed his testimony and stated that he did not recall when he received the refund information from the FTC. This was the first of three separate errata sheets that were created at different times for this same deposition transcript.

The substantive significance of the change in testimony from the defense perspective is that it arguably shows that Dr. Hastak did not have a sound basis for pursuing the survey method that he used in 2009. The ethical argument is that the change of testimony was engineered by counsel after defendants challenged the truthfulness of Dr. Hastak's testimony. In their motion to dismiss, defendants suggested that the conduct "may be" dishonest conduct, conduct prejudicial to the administration of justice, and/or falsification of evidence in violation of Rules 8.4(c), 8.4(d) and 3.3 of the Colorado Rules of Professional Conduct respectively.

One question, of course, is whether the proposed changes to the deposition testimony were in fact the product of counsel rather than Dr. Hastak himself. The FTC acknowledges that attorney Alysa S. Bernstein talked to Dr. Hastak about when he learned to the refund policy before the first errata sheet was prepared. That is not particularly troublesome. The defendants had raised a question about when he obtained the information, and there is nothing unethical about her asking the witness about it. Dr. Hastak recalls that he also discussed the third errata sheet with Mr. Frankel, although he apparently says that he came up with the third errata sheet on his own. Mr. Frankel does not recall such a discussion. Transcript, January 11, 1013 ("January 11 Tr.") at 66. Ms. Bernstein does recall having talked with Dr. Hastak about what

became the third errata sheet, and she acknowledges that she did not discourage him from doing that. *Id.* She says that this was a mistake on her part. *Id.* at 67.

What most concerns the Court is a chain of emails between Ms. Bernstein and Mr. Goteiner that was submitted as an exhibit to Mr. Goteiner's declaration [#185-1]. In Goteiner's email to Bernstein of September 21, 2011, he relates that on the previous day Ms. Bernstein and a second FTC lawyer, Michelle Rosenthal, had proposed to have Dr. Hastak "withdraw his latest errata regarding the efficacy testimony and other unspecified errata" (this refers to the third of the three errata sheets) and to "file a superseding errata sheet which include (sic) the substance of his first set of errata regarding his conversations with David [Frankel] regarding when he knew about the guarantee numbers," all of this conditioned upon defendants' agreement not to refer to Dr. Hastak's latest set of errata in the litigation. *Id.* at 2-3. Ms. Bernstein responded that Mr. Goteiner had mischaracterized their position, but she confirmed that they had "offered to withdraw Dr. Hastak's clarifications on his latest errata in the spirit of compromise . . . ."

Rule 30(e) of the Federal Rules of Civil Procedure permits a deponent to make "changes in the form or substance of the deposition" and describes the process of doing so. However, "[t]he purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported 'yes' but I said 'no,' or a formal error, i.e., he reported the name to be 'Lawrence Smith' but the proper name is 'Laurence Smith,' then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath." *Garcia v. Pueblo Country Club,* 299 F.3d 1233, 1242 n.5 (10th Cir. 2002)(quoting *Greenway v. International Paper Co.,* 144 F.R.D. 322, 325 (W.D. La. 1992)). "A deposition is not a take home examination." *Id. See also Burns v. Board of County Commissioners of Jackson County,* 330 F.3d 1275, 1282 (10th Cir. 2003).

FTC counsel now stipulate that the changes that were proposed in the third errata sheet were improper under that standard. *See* January 11 Tr. at 64. There is no controversy about the second errata sheet. As to the first errata sheet, it would have changed the testimony he provided under oath. The tendered explanation is that his recollection that he learned about the refund policy in 2009 had been shown (by the defendants initially) to be wrong, and he wanted to correct his testimony to more accurately say that he did not recall when he obtained that information. I think that probably is contrary to the *Garcia* footnote, but I am prepared to assume that it was done in good faith. I am more concerned about the notion that errata sheets are negotiable, and worse yet, that it is ok to condition the modification or withdrawal of an errata sheet on the defendants' agreement not to not refer to it in the case. I note that Ms. Bernstein has not denied that this happened, and I accept Mr. Goteiner's representation that it did.

Having said that, however, dismissal of the case based upon this conduct would be a gross overreaction. Preclusion of Dr. Hastak's testimony would also be inappropriate. Severe sanctions of that nature run contrary to the public's interest in having disputes resolved on their merits, including a full disclosure of relevant facts and opinions. *See U.S. v. Gonzales,* 164 F.3d 1285, 1292 (10th Cir. 1999)(quoting *Taylor v. Illinois,* 484 U.S. 400, 412 (1988). *See also People v. Lee,* 18 P.3d 192, 196-97 (Colo. 2001). Such sanctions should be used only where an attorney's conduct is egregious and continuing, such that no other sanction would be sufficient to deter future misconduct. This is not such a case. This is a case of poor judgment and, I suspect, inexperience. I have no reason to believe that this incident is characteristic of the attorney, or that it will happen again. We all make mistakes.

The Court strikes the first and third errata sheets.  The Court further orders that that defendants may, if they wish, re-depose Dr. Hastak at the FTC's expense, including costs and attorney's fees reasonably incurred by the defendants to prepare for and to take the re-deposition.  Defendants may inquire both about the substance of his opinions and about the history of the various versions of the errata sheets, i.e., the respective roles that Dr. Hastak and counsel played in suggesting, drafting and editing those errata sheets.  The Court's intent is that defense counsel be able to inquire fully on that subject.  The Court directs FTC counsel not to "prepare" Dr. Hastak with respect to that subject.  If evidence is developed in the re-deposition that counsel believes warrants further examination of these issues by the Court, they may bring it to the Court's attention.

     **3.   <u>Conduct concerning witness Paul Andrews</u>**.

A junior lawyer on the FTC team in this case, Michelle Rosenthal, took the deposition of Paul Andrews, a dentist who purchased some of the defendants' products and services, on April 13, 2012.  Prior to the deposition Ms. Rosenthal spoke to Mr. Andrews several times on the phone.  She believes that during his deposition Mr. Andrews testified contrary to what he had told her previously.  Mr. Andrews was represented during the deposition by a Florida attorney and former Florida state court judge, Clayton Simmons.  Mr. Simmons was called as a witness during the January 11, 2013 hearing in this case.  He testified that Ms. Rosenthal became very frustrated, argued with Mr. Andrews, accused him of changing his "testimony," and ultimately broke down and cried.

Four days later, on April 17, 2012, Mr. Simmons received a telephone call from Ms. Rosenthal and her supervisor, Mr. Frankel.  Mr. Simmons found the call to be very unusual, and he began to take notes.  Mr. Frankel told him that this was the worst case of a witness basically

lying to the FTC during an investigation that he had ever seen.  He said that they were considering referring Mr. Andrews to the Department of Justice for prosecution under 18 U.S.C. § 1001.  However, Mr. Frankel suggested that when the deposition transcript was available, Mr. Simmons "could review it in detail with Mr. Andrews and advise Mr. Andrews that he could correct or even change his testimony, using the errata sheet; and if that were to happen – or depending on what he did, they might or might not refer him to the Department of Justice." January 11 Tr.") at 29.  Mr. Simmons' reaction was that he was offended that representatives of the government would make that kind of threat.  Mr. Simmons' interpretation was, "either Dr. Andrews change his testimony to comport with what Miss Rosenthal believed it should be or they were going to refer him to the Department of Justice for prosecution."  *Id.* at 30.

Mr. Simmons did nothing about it at the time, but when defense counsel later contacted him to see whether Dr. Andrews would be willing to testify at trial, Mr. Simmons told him about the April 17, 2010 telephone call.  Mr. Simmons later provided a declaration [#184] and, as indicated, testimony at the January 11, 2013 hearing in this case.  Mr. Simmons also told Dr. Andrews about the call.  He says that Dr. Andrews is very upset and is adamant that he not have any further involvement in the case.  January 11 Tr. at 32.

In response, Ms. Tucci cited Rule 4.5 of the Colorado Rules of Professional Conduct, which prohibits a lawyer's threatening criminal charges to obtain an advantage in a civil matter but permits the lawyer to notify another person in a civil matter that the lawyer reasonably believes the other's conduct may have violated criminal rules or statutes.  Rule 4.5(a) and (b). Mr. Simmons interpreted Mr. Frankel's statements to be a threat.  Based on his testimony as to what was said, which I found to be credible, I too would have interpreted the statements as a threat.  Ms. Tucci does not dispute that Mr. Simmons testified truthfully.  January 11 Tr. at 69-

70.  Her position is that Mr. Frankel did not intend his statements as a threat.  She suggests that what Mr. Simmons inferred and what Mr. Frankel intended to communicate were two different things.

Mr. Frankel then provided his recollection.  He was briefed by Ms. Rosenthal on the deposition and her belief that Dr. Andrews' testimony differed from what he had told her previously and was not truthful.  He decided to call Mr. Simmons, a decision he now regrets.  He says that his intent was to give Dr. Andrews a chance to "fix it" if he had testified untruthfully. *Id.* at 116.  He stated "as an officer of this court" that he did not intend to threaten Mr. Simmons or Dr. Andrews or to compel Dr. Andrews to change his testimony.  *Id.* at 116-17, 124.  His recollection of the conversation with Mr. Simmons differed on at least one detail; he says that his "this is the worst case" statement concerned the Dalbeys' "fraud," not Dr. Andrews' testimony. *Id.* at 119, 122.  In any event, Mr. Frankel admitted that he had learned a very good lesson from this experience.  *Id.* at 124.

A threat to report a witness to the Department of Justice for prosecution unless he changed deposition testimony would be entirely inappropriate.  I agree with Comment 6 to Rule 4.5 of the Colorado Rules of Professional Conduct that "it may be difficult in certain circumstances to distinguish between a notification and a threat."  As indicated above, however, I have little difficulty with this distinction in this case.  Mr. Frankel's statement was reasonably perceived as a threat.

I take into consideration, however, that Mr. Frankel represents as an officer of the Court that that was not his intent.  He regrets it and says he has learned from the experience.  He did not expressly apologize to Mr. Simmons or to Dr. Andrews during the hearing.  He did, however, apologize to the Court.  He admitted that he should not have made the call, and given that he

made the call, that he should have said what he said differently.  *Id.* at 128.  Ms. Tucci did

apologize expressly to Mr. Simmons on behalf of the FTC.  *Id.* at 82.

I found Mr. Frankel's representation as an officer of the Court about his intent to be

credible and his admission of error to be sincere.  If I thought that Mr. Frankel intentionally used

a threat of criminal prosecution to get Dr. Andrews to provide testimony helpful to the FTC, I

would not hesitate to disqualify him from further participation in the case, and I would file a

complaint with the Office of Attorney Regulation Counsel.  However, I do not read him or the

situation that way.  He exercised poor judgment, displayed a surprising naiveté given his

experience, and set a poor example for his junior colleague.  I respect the fact that the defendants

and Mr. Simmons have a different opinion.  However, based on the totality of the evidence and

argument presented, and my assessment of Mr. Frankel's credibility, I find that his intent was

probably not what it appeared to be.

The problem remains that Mr. Frankel's conduct, in combination perhaps with the

difficulties that occurred during the deposition, might have prejudiced the defendants.

Defendants have indicated that they think Dr. Andrews' testimony would be favorable to them.

He apparently purchased the Dalbeys' products and services, had success, and became a

testimonialist for them.  I am aware that the defendants withdrew an earlier declaration signed by

Dr. Andrews, and there might be some question about which party, if either, his testimony would

help.  Nevertheless, if counsel's conduct caused the defendants to lose a valuable witness, that

would be concerning.  For that reason the Court orders the following:

  a.  If defendants want Dr. Andrews' testimony at trial, and if Dr. Andrews changes his

      mind and agrees to testify, all expenses incurred by him, including the reasonable

costs and fees associated with bringing his lawyer to Colorado with him, will be borne by the FTC.

b.  If defendants want his testimony but he remains unwilling to testify, then the testimony he provided during his deposition will be admitted if requested by the defendants.  The transcript will be edited so as to remove colloquy between counsel and any other portions not required fully to communicate to the jury the substantive questions of counsel and the answers of the witness.  Any dispute in that regard will be brought to the Court's attention.

c.  If defendants want his testimony, he is unwilling to come to trial, and defendants are not satisfied with the deposition testimony, they may take another deposition to preserve his testimony.  Fees and expenses reasonably incurred by the defendants, Dr. Andrews and his attorney will be borne by the FTC.

d.  In any event the FTC is directed to reimburse Dr. Andrews, Mr. Simmons, or the defendants, as the case might be, for costs and attorney's fees reasonably incurred in Mr. Simmons' trip to Colorado to testify at the January 11, 2013 hearing.

e.  David Frankel will forthwith communicate to Mr. Simmons an apology to both Dr. Andrews and Mr. Simmons.

DATED this 11th day of March, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge