IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-1396-RBJ-KLM

FEDERAL TRADE COMMISSION, and
STATE OF COLORADO, *ex rel.*
JOHN W. SUTHERS, ATTORNEY GENERAL

    Plaintiffs,

v.

RUSSELL T. DALBEY;
DEI, LLLP;
DALBEY EDUCATION INSTITUTE, LLC;
IPME, LLLP; and
CATHERINE L. DALBEY

    Defendants.

## Order on Pending Motions

The matter is before the Court on defendants Russell and Catherine Dalbey's motions for summary judgment [document # 229] and for exclusion of experts [#231]; plaintiff Federal Trade Commission's motion for summary judgment [#233]; and plaintiff State of Colorado's motion for summary judgment as to counts six and seven [#234].

## FACTS

Russell Dalbey marketed products and services that he claims taught people how to make money in a short period of time by brokering promissory notes. The FTC and the State of Colorado contend that Mr. Dalbey and his wife Catherine, operating through several entities that are now in bankruptcy proceedings, used deceptive infomercials and other means to get consumers to invest in seminars and other programs and materials of little or no value. The FTC

1

asserts violations of section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the "Telemarketing Sales Rule," 16 C.F.R. Part 310, issued pursuant to the Telemarketing Act, 15 U.S.C. § 6102(a). The State of Colorado asserts violations of the Colorado Consumer Protection Act, C.R.S. §§ 6-1-105(1)(e) and (g). In addition to declaratory and injunctive relief, some of which has already been granted by stipulation, plaintiffs seek monetary relief on behalf of alleged victims, and costs and attorney's fees as appropriate.

Defendants deny that their advertising was misleading and argue that the representation that consumers could make money easily and quickly by using their programs and methods was true. The Court will refer to additional facts and allegations of facts in the context of the pending motions.

## CONCLUSIONS

**Defendants Russell and Catherine Dalbey's Motion for Summary Judgment Dismissal of All Claims [#229]: DENIED.**

Having reviewed the motion, response and reply, it is evident that there are genuinely disputed issues of material fact, at least including the following:

1. Did some customers make money quickly and easily using the program's methods? Defendants argue that this is indisputable, based upon the experience of customers such as those who provided the "testimonials" that are incorporated into defendants' infomercials. However, the "testimonials" are hearsay to the extent that they are offered to prove the truth of what they assert. Moreover, a determination of how quickly and how easily any individual made money, and in particular evaluation of their credibility which includes among other things demeanor and manner while on the stand, is difficult at best without observing the testimony in court.

2. Defendants state in their reply that they never claimed that customers were likely to make money. That is a disputed fact. Even if defendants never used those words as such, the infomercials arguably delivered that message. In addition to reviewing the infomercials, the Court will evaluate what the defendants themselves say about this and their credibility.

3. Is it true that only 296 of more than 900,000 customers made any money, and that most of those who did made very little, perhaps not enough to cover the cost of the program? If so, what do the defendants have to say, under oath, about that, and what does that say about whether a claim that might be literally true was or was not misleading?

4. Were the claims about making quick and easy money mere puffery? That depends on the context of the overall message delivered by the infomercial. The context is not undisputed. The puffery argument appears to be inconsistent in any event with the claim that the statements were true. Again, particularly given that this will be a bench trial, the Court prefers to resolve the puffery issue in the context of actual testimony and other evidence presented under oath from witnesses who can be cross-examined by opposing counsel and questioned, if necessary, by the Court.

5. The parties debate what "net impression" consumers would have from defendants' advertisements. It is impractical in the extreme, probably impossible, to present all of the defendants' advertisements, testimonials, etc. used over a period of years. Neither side commissioned a survey of consumer reaction and impressions, although either side could have done so. The Court is left to determine what impression a reasonable consumer probably would draw from whatever body of advertisements, infomercials, testimonials, etc. is presented. The "net impression" is a material fact and a disputed fact.

6. The whole issue of disclaimers raises genuinely disputed issues of fact. To what extent was marketing done with no disclaimer at all, despite the defendants' policies to the contrary? What disclaimers were used, with which advertisements, and when? As for the infomercials, plaintiffs argue that the disclaimers were not prominent or conspicuous but were in small, hard to read font with no audio disclaimers, short display times, competing audio and textual claims, and minimal screen contrast. Defendants reply that their disclaimers were prominent, conspicuous, easily visible, and centrally displayed. The Court observed one infomercial and was provided with disks containing that and others. However, the Court wishes to hear testimony about the disclaimers from defendants and from consumers.

7. If liability is established, what is a fair and appropriate amount of monetary relief? Government counsel asks the Court to award 370 million dollars of "equitable monetary relief." They urge the Court to follow the lead of the Central District of California in *FTC v. John Beck Amazing Profits*. In that case the court granted summary judgment in favor of the Commission, 865 F. Supp. 2d 1052. Following supplementary briefing the court awarded $478,919,765 in monetary relief to the government. *FTC v. John Beck Amazing Profits*, No. 2:-09-cv-04719, 2012 WL 3705048, at *7 (August 21, 2012). I have read Judge Nguyen's orders with interest and admiration. There are similarities between the two cases, but there are also differences (for example, largely undisputed facts, claims apparently focused almost entirely upon a limited series of infomercials). The court also appears to have been more amenable to taking testimony by affidavit than I am.

In short, this Court is not prepared on the present record to resolve all issues in favor of the government. Nor is the Court able or willing to follow defendants' bidding in response and throw the case out. Plaintiffs have raised serious and disturbing issues, but these include genuinely disputed issues of fact. It seems to be more and more in vogue these days to try cases on paper. This is not a case that lends itself to that. I want to see live witnesses, assess their credibility, and consider each item of evidence in the context of the whole picture. To do that we are going to have to have an old fashioned trial.

I will add a word or two about the parties' briefs. Both sides enjoy the benefit of having either present or former FTC lawyers representing them. Counsel on both sides are knowledgeable and experienced, and they have devoted a great deal of time and expertise to the pending motions and briefs. They have cited dozens upon dozens of cases in the support of and opposition to their respective summary judgment motions from a myriad of jurisdictions, and I suspect that much of it finds its way into counsels' briefs in other cases as well. It is helpful education, but it will be more helpful as we go forward if the parties will synthesize this huge body of arguments and law into <u>concise</u> trial briefs. You don't need more research. To be most helpful, the trial briefs will omit repetition of the parties' extensive arguments about the facts. They will present a (1) short list of legal issues, focusing on what the party believes are the jugular issues, and (2) the best decision of the United States Supreme Court or the Tenth Circuit that supports your position on the issue. I do not need or want string cites. You of course may fill in gaps where there is no Supreme Court or Tenth Circuit law with a leading case from another circuit, and if there is none, then a leading district court case from another district.

**Defendants' Motion to Exclude Plaintiffs' Experts Dr. Manoj Hastak and Dr. Frederica Conrey [#231]: DENIED.**

Defendants challenge both of plaintiffs' survey experts under Rule 702 of the Federal Rules of Evidence which provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 assigns the trial judge "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). An opinion is reliable if the witness is qualified to give it, and it is based upon reliable scientific principles and sufficient facts. The Court may consider such factors as whether the expert's theories or methods can be tested; whether they have been subjected to peer review and publication; whether there is a known error rate; and whether they have gained a degree of acceptance in the relevant community. *Daubert,* 509 U.S. at 593-94. Opinions are relevant if they will be of assistance to the jury, that is, is there a "fit" or logical relationship between the proffered testimony and the factual issues in the case.

The objective of *Daubert's* gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The plaintiff need not "prove that the expert is undisputably correct or that the expert's theory is 'generally

6

accepted' in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability requirements." *Goebel v. Denver & Rio Grande Western R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (internal citations omitted). However, the Court is mindful that Rule 702 was intended to create a liberal standard for the admissibility of expert testimony, not to create new barriers. *See Cook v. Rockwell Intern. Corp.,* 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006).

As was explained during the "Daubert" portion of the January 11, 2013 hearing, Dr. Hastak conducted an initial survey by mail, and Dr. Conrey followed up in an attempt to obtain more responses. In their motion defendants raised a number of objections. One consistent theme is that the surveys did not attempt to evaluate consumers' net impressions from defendants' advertisements. The Commission acknowledges that that was not their purpose. For all the time and expense the parties have invested in this case, neither of them commissioned that type of survey. The Hastak/Conrey survey attempted to obtain information on earnings and profits experienced by consumers of defendants' products. It appears to have been similar to the Conrey survey that presented in *John Beck.* 865 F. Supp. 2d at 1064-66. The Commission argues that a similar Hastak survey was accepted in F.T.C. v. Stefanchik, No. C04-1852RSM, 2007 WL 1058579 (W.D. Wash, April 3, 2007), *aff'd,* 559 G.3d 924 (9th Cir. 2009). However, the court there made it clear that no Rule 702/Daubert challenge had been made in that case. *Id.* *6.

A second primary point made by defense counsel during the hearing, essentially by means of reference to the report of defendants' expert Dr. Dhar, is that the surveys were not conducted in an independent and unbiased manner. Counsel states that a significant part of Dr. Hastak's compensation comes from payments by the Commission. Moreover, consumers

received the surveys in envelopes from the Commission which "implicitly" indicated that their responses could be shared with other agencies such as the Internal Revenue Service. People do not like to say how much money they make, according to Dr. Dhar, which might explain the small number of responses the surveys received. The Court finds that those arguments concern credibility and go to the weight, not the admissibility, of the survey evidence.

Dr. Dhar raises a number of criticisms of the surveyors' methods. I acknowledged during the hearing that some of the criticisms "sound like they're pretty legitimate to me." Transcript, January 11, 2013, at 137. However, I also note that Judge Nguyen was persuaded by Dr. Conrey's testimony that the methods she used were in accord with generally accepted standards in the field. *John Beck,* 865 F. Supp. 2d 1065. If either Dr. Hastak or Dr. Conrey is called as an expert witness at the trial of the present case, a foundation will have to be laid in terms of the methods they used and why the methods were considered to be accepted and reliable in their field. I am prepared to assume at this time, particularly in a bench trial setting, that they can provide such testimony.

In summary, the Court finds that the survey results and these experts' opinions concerning the results as expressed in their reports [#233-37, #233-38] are relevant, albeit to a different issue than consumers' net impressions of the advertisements. Both experts appear to have substantial and appropriate qualifications. The reliability of the opinions is subject to attack, both in terms of the witnesses' alleged lack of independence and in terms of some of the particular methods used, even if they are broadly within generally accepted standards. However, these criticisms go to the weight and credibility of the evidence and can be considered together with Dr. Dahr's opinions and other evidence and argument. I conclude that defendants have not

provided a sustainable objection to the admissibility of the evidence, assuming that the appropriate foundation is laid at trial.

### Plaintiffs' Motion for Summary Judgment on All Counts Against Defendants [#233]: DENIED.

For the same reasons mentioned in respect to defendants' motion, the Court finds that there are fact issues that are genuinely disputed. I do note that, although this motion covers much of the same ground that was covered in the briefing on defendants' motion, the parties nevertheless have submitted another 138 pages of briefs supported by 116 exhibits containing 1754 pages of documents. As I read through these briefs, perhaps not quite as closely as I read the earlier set, I again found the "education" they provided to be interesting and, to a degree, helpful in preparing me for trial. However, this approach is not necessarily conducive to summary disposition.

### Plaintiff State of Colorado's Motion for Summary Judgment as to Counts Six and Seven of the Complaint [#234]: DENIED.

The Colorado Consumer Protection Act, similarly to federal statutes and rules, is aimed at deceptive trade practices. The State's motion incorporates the Commission's presentation of facts. There are genuine issues of material fact that preclude summary disposition of the State's claims. I note that in the parties' Joint Status Report [#122], filed October 13, 2011, they listed six factual issues that they represented were disputed. *Id.* at 7. Although that list, compiled a year and a half ago, and the issues debated in the parties' summary judgment briefs are not identical, it reinforces my view that this case needs either to be settled or to be tried and not decided on the papers.

### Order

1. Motion #229 is DENIED.

2. Motion #231 is DENIED.

3. Motion #233 is DENIED.

4. Motion #234 is DENIED.

DATED this 11th day of March, 2013.

                                              BY THE COURT:

_____

R. Brooke Jackson
United States District Judge