**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-1396-RBJ-KLM

FEDERAL TRADE COMMISSION and
STATE OF COLORADO, ex rel.
JOHN W. SUTHERS, ATTORNEY GENERAL

      Plaintiffs,

v.

RUSSELL T. DALBEY,
DEI, LLLP.
DALBEY EDUCATION INSTIUTE, LLC,
IPME, LLLP,
CATHERINE L. DALBEY, and
MARSHA KELLOGG,

      Defendants.

---

**STIPULATED ORDER FOR FINAL JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF
AS TO RUSSELL T. DALBEY AND CATHERINE L. DALBEY**

---

Plaintiffs, the Federal Trade Commission ("Commission" or "FTC") and the State of

Colorado (collectively "Plaintiffs"), commenced this action by filing a Complaint for Permanent

Injunction and Other Equitable Relief against Defendants Russell T. Dalbey; DEI, LLLP;

Dalbey Education Institute, LLC; IPME, LLLP; Catherine L. Dalbey; and Marsha Kellogg

pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. §§ 53(b), 57b; the Telemarketing and Consumer Fraud and Abuse Prevention Act.

("Telemarketing Act"), 15 U.S.C. §§ 6101-6108; and the Colorado Consumer Protection Act,

COLO. REV. STAT. §§ 6-1-101 through 115 ("CCPA"), alleging violations of Section 5(a) of

the FTC Act, 15 U.S.C. § 45(a); the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part

310, promulgated pursuant to the Telemarketing Act; and the CCPA, COLO. REV. STAT. § 6-

1-105(1)(e) and (g).

Defendants Russell T. Dalbey and Catherine L. Dalbey, having been represented by

counsel, and acting by and through said counsel, have consented to the entry of this Stipulated

Order for Final Judgment and Order for Permanent Injunction and Other Equitable Relief as to

Russell T. Dalbey and Catherine L. Dalbey ("Order") without a trial or adjudication of any issue

of law or fact herein.

Defendants DEI, LLLP, Dalbey Education Institute, LLC, and IPME, LLLP, filed

petitions for bankruptcy in the United States Bankruptcy Court for the District of Colorado on

September 21, 2011.

Plaintiffs reached a settlement with Defendant Marsha Kellogg, and the Court entered a

Stipulated Final Order against Ms. Kellogg on June 7, 2011. [Dkt. No. 29].

<u>FINDINGS</u>

1.      This is an action by the Commission instituted under Section 13(b) of the FTC Act, 15

U.S.C. § 53(b), and by the State of Colorado under the CCPA, COLO. REV. STAT. §§ 6-1-101

through 115 ("CCPA").  The Commission and the State of Colorado have the authority to seek

the relief contained herein.

2.      The Complaint states claims upon which relief may be granted under Sections 5(a), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b; the Telemarketing Act, 15 U.S.C. §§ 6101-6108; the TSR, 16 C.F.R. Part 310; and the CCPA, COLO. REV. STAT. §§ 6-1-101 through 115.

3.      This Court has jurisdiction over the subject matter of this case and personal jurisdiction over Defendants.

4.      Venue in the United States District Court for the District of Colorado is proper pursuant to 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

5.      The alleged activities of Defendants are "in or affecting commerce" as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

6.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

7.      Defendants waive:  (a) all rights to seek appellate review or otherwise challenge or contest the validity of this Order; (b) any claim that they may have against the Plaintiffs, their employees, representatives, or agents; (c) all claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996); and (d) any rights to attorney's fees that may arise under said provision of law.  Plaintiffs and Defendants shall each bear their own costs and attorney's fees incurred in this action, including costs and attorney's fees incurred in the asset discovery period contemplated by this Order.

8.      Entry of this Order is in the public interest.

<u>DEFINITIONS</u>

1.      **"Advertisement"** shall mean any written or oral statement, illustration, or depiction designed to effect a sale or create interest in the purchasing of products, services, or programs, whether it appears in a brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, packaging, package insert, label, film, slide, radio, television or cable television, audio program transmitted over a telephone system, program-length commercial ("infomercial"), the Internet, email, text message, press release, video news release, or in any other medium.

2.      **"Asset"** or **"assets"** shall mean any legal or equitable interest in, right to, or claim to, any real or personal property, including, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

3.      **"Commerce"** shall mean commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.      **"Commission"** shall mean the Federal Trade Commission.

5.　　**"Competent and reliable evidence"** shall mean tests, analyses, research, studies, surveys, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by individuals qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

6.　　**"Customer List"** shall mean a list in Excel, Access, or SQL format that shall be produced electronically and include in separate fields for each customer the following:  first name, middle name or middle initial, last name, alias or surname; mailing address recorded as address 1, address 2, city, state, zip code, and country; the quantity of each product, program, or service purchased; the amount paid for each product, program, or service, less any amount credited for returns or refunds; total amount paid, less any amount credited for returns or refunds; dates for each transaction; and, if available, the customer's telephone number(s) and email address(es).  The list shall include a top row identifying the headings for each column in the list and a key that identifies all codes used in the list.

7.　　**"Defendants"** shall mean Defendants Russell T. Dalbey and Catherine L. Dalbey.

8.　　**"Endorsement"** or **"Testimonial"** shall mean, as defined in 16 C.F.R. § 255.0(b), any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical to those of the sponsoring advertiser.  The party whose

5

opinions, beliefs, findings, or experience the message appears to reflect will be called the endorser and may be an individual, group, or institution.

9. **"Infomercial"** shall mean any written or oral statement, illustration, or depiction that is one-hundred thirty (130) seconds or longer in duration that is designed to effect a sale or create interest in the purchasing of any product, program, or service, which appears in any medium, including, but not limited to, radio, television, and the Internet.

10. **"Material"** shall mean, for purposes of Section IV (Prohibition Against Misrepresentations), likely to affect a person's choice of, or conduct regarding, products, programs, or services or a charitable contribution.

11. **"Material connection"** shall mean any relationship that materially affects the weight or credibility of any endorsement and that would not reasonably be expected by consumers.

12. **"Plaintiffs"** shall mean (a) the Federal Trade Commission, and (b) the State of Colorado, as represented by the Colorado Attorney General's Office.

13. **"Telemarketing"** shall mean a plan, program, or campaign, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310, that is conducted to induce the purchase of products, programs, or services or a charitable contribution by use of one or more telephones and that involves more than one interstate telephone call.

14. A requirement that Defendants **"notify," "furnish,"** or **"submit"** to the Commission shall mean that Defendants shall send, unless otherwise directed by the Commission's authorized representatives, the necessary information via email to DEbrief@ftc.gov, or via **overnight courier** (not the U.S. Postal Service), costs prepaid, to:

Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade

Commission, 600 Pennsylvania Avenue, N.W., Washington, DC 20580.

The subject line of the email or package shall begin:  *FTC v. Russell Dalbey, et al.*, Matter No.

X110040.

15.     A requirement that Defendants **"notify," "furnish,"** or **"submit"** to the Colorado

Attorney General's Office shall mean that Defendants shall send, unless otherwise directed by an

authorized representative of the Colorado Attorney General's Office, the necessary information

via email to Jay.Simonson@state.co.us and Nettie.Morano@state.co.us or via **overnight courier**

(not the U.S. Postal Service), costs prepaid, to:

Colorado Attorney General, Attn:  Consumer Fraud Unit (Re:  Russell T. Dalbey), Ralph

L. Carr Colorado Judicial Center, 1300 Broadway, Seventh Floor, Denver, CO 80203.

16.     The terms **"and"** and **"or"** in this Order shall be construed conjunctively or disjunctively

as necessary, to make the applicable sentence or phrase inclusive rather than exclusive.

17.     The term **"including"** in this Order shall mean "including without limitation."

## I.     BAN ON MARKETING OR SALE OF INCOME-GENENERATING OR BUSINESS OPPORTUNITIES

IT IS HEREBY ORDERED that Defendants, whether acting directly or through any other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation, limited liability company, subsidiary, division, branch, trust, or other entity or device, are permanently restrained and enjoined from:

A.     Advertising, marketing, promoting, offering for sale, or selling any product, program, or service that is represented, directly or by implication, to a consumer as a business opportunity, including:  (1) purporting to teach consumers how to find, list, broker, or earn income from the purchase, sale, or transaction of promissory notes; (2) work-from-home opportunity; (3) coaching or educational program; (4) franchise; or (5) other opportunity to earn income other than as an employee, independent contractor, or vendor of either or both Defendants;

B.     Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any product, program, or service that is represented, directly or by implication, to a consumer as a business opportunity, including:  (1) purporting to teach consumers how to find, list, broker, or earn income from the purchase, sale, or transaction of promissory notes; (2) work-from-home opportunity; (3) coaching or educational program; (4) franchise; or (5) other opportunity to earn income other than as an employee, independent contractor, or vendor of either or both Defendants; and

C.     Holding any ownership interest, share, or stock in any business that engages in or assists in advertising, marketing, promoting, offering for sale, or selling any product, program, or

service that is represented, directly or by implication, to a consumer as a: (1) business

opportunity, including but not limited to purporting to teach consumers how to find, list, broker,

or earn income from the purchase, sale, or transaction of promissory notes; (2) work-from-home

opportunity; (3) coaching or educational program; (4) franchise; or (5) other opportunity to earn

income other than as an employee, independent contractor, or vendor of either or both

Defendants; *provided, however*, this prohibition shall not apply to any publicly traded company

in which either or both Defendants owns one (1) percent or less of the outstanding common

shares.

## II.     BAN ON TELEMARKETING

IT IS FURTHER ORDERED that Defendants, whether acting directly or through any

other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation,

limited liability company, subsidiary, division, branch, trust, or other entity or device, are

permanently restrained and enjoined from engaging or participating in telemarketing, and from

assisting others engaged in telemarketing.

## III.     BAN ON INFOMERCIALS

IT IS FURTHER ORDERED that Defendants, whether acting directly or through any

other person, officer, agent, servant, employee, sole proprietorship, partnership, corporation,

limited liability company, subsidiary, division, branch, trust, or other entity or device, are

permanently restrained and enjoined from engaging or participating in the production or

dissemination of any infomercial, and from assisting others engaged in the production or

dissemination of any infomercial.

## IV.    PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendants, their agents, servants, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, in connection with promoting or offering for sale any product, program, or service, are permanently restrained and enjoined from engaging in, or assisting others in engaging in:

A.    Misrepresenting, directly or indirectly, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration:

1.    The efficacy of a product, program, or service including the likelihood that a consumer will obtain the full benefits of the proffered product, program, or service;

2.    The total cost to purchase, receive, or use the product, program, or service;

3.    The exclusivity or limited availability of a product, program, or service;

4.    Any material aspect of the performance, efficacy, nature, or central characteristics of the product, program, or service; including that the benefits of the product, program, or service can obtained quickly or easily;

5.    Any material restrictions, limitations, or conditions to purchase, receive, or use the product, program, or service; including any conditions that might limit certain consumers' ability to obtain the full benefits of the proffered product, program, or service;

6.    That any person has provided an endorsement for such product, program, or service, or that such endorsement represents the actual and current opinions, findings, beliefs, or experiences of the endorser; and

7.      Any fact material to a consumer's decision to purchase any product, program, or service.

B.      Representing, directly or indirectly, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration:

1.      That consumers who use any such product, program, or service can generally expect to achieve the results represented by an endorser of such product, program, or service; or

2.      The benefits, performance, or efficacy of any product, program, or service, unless the representation is true, not misleading, and, at the time it is made, Defendants possess and rely upon competent and reliable evidence that, when considered in light of the entire body of relevant and reliable evidence, is sufficient to substantiate that the representation is true.

## V.      MONETARY RELIEF AND CONSUMER REDRESS

IT IS FURTHER ORDERED that:

A.      Judgment is hereby entered in favor of Plaintiffs and against Defendants, jointly and severally, in the amount of Three-Hundred-Thirty Million, Eighty-Four Thousand, Three-Hundred-Fifty-Four Dollars, and Seventy Cents ($330,084,354.70), as equitable monetary relief, which the parties stipulate only for purposes of this Section represents consumer injury and disgorgement alleged in the Complaint.

1.      Defendants are ordered to pay to the Commission and the State of Colorado, not later than thirteen (13) months from the date of entry of this Order, a sum comprising their maximum ability to pay the three-hundred-thirty million, eighty-four thousand,

11

three-hundred-fifty-four dollars, and seventy cents ($330,084,354.70) judgment.

Plaintiffs shall determine the Defendants' maximum ability to pay ("maximum ability to

pay amount") following the discovery set out at Subparagraph 5 below, and subject to

Defendants' compliance with the provisions of Subparagraphs 4, 6, 7, 8, and 9.  Plaintiffs

shall inform Defendants of the maximum ability to pay amount, and the reasons

underlying its calculation, in writing, no later than twelve (12) months from the date of

entry of this Order, *provided that*, for good cause, the Court may extend this date upon a

showing that Defendants' failure to cooperate or otherwise comply with Subparagraph 8

below has unreasonably delayed or hindered the discovery.

2.      Defendants shall pay the maximum ability to pay amount, via electronic means:

(1) within ten (10) business days of receiving Plaintiffs' notification of the amount and

the reasons therefor, pursuant to Subparagraph 1 above, or, (2) if Defendants file a

motion pursuant to Subparagraph 3 below, within ten (10) business days after the motion

has been resolved by the Court.  In either case, Plaintiffs shall inform Defendants of how

the payment is to be divided between the Plaintiffs and shall provide instructions on

making the payments.

3.      Within ten (10) business days of receiving Plaintiffs' notification of the maximum

ability to pay amount and the reasons therefor, Defendants may move the Court to reduce

the amount.  Plaintiffs' determination of the maximum ability to pay amount shall be

upheld unless the Court finds it objectively unreasonable for Defendants to pay that

amount.  In no circumstance shall the Court find such sum objectively unreasonable if

12

inability to pay has been self-induced by Defendants (*e.g.*, through asset protection vehicles or transfers to third parties not conducted at arms-length).  The obligation of Defendants to pay the maximum amount shall be temporarily stayed upon Defendants' timely filing of a motion challenging Plaintiffs' determination of the maximum ability to pay amount.  Such stay shall be lifted upon the Court's resolution of the motion.

4.      Financial Disclosure

a)      Defendants each shall, within five (5) business days after entry of this Order, prepare, execute, and serve on counsel for the FTC and the State of Colorado, complete financial statements fully disclosing their finances, including those of all corporations, limited liability companies, partnerships, trusts, or other entities that they own, control, or are associated with in any capacity, jointly or individually, using the form attached to this Order as Attachment A.  The financial statements shall include assets held outside the territory of the United States, shall be accurate as of the date of the entry of this Order.

b)      Defendants shall, within five (5) business days after entry of this Order, serve on counsel for the FTC and the State of Colorado, copies of signed and completed federal and state income tax forms, including all schedules and attachments, for all years from January 1, 2006, to the present.

c)      Defendants shall, within five (5) business days after entry of this Order, provide access to records and documents held by financial institutions outside the

territory of the United States by signing and serving on counsel for the FTC and the State of Colorado the Consent to Release of Financial Records (attached to this Order as Attachment B).

5.      The FTC and the State of Colorado shall conduct discovery upon parties and non-parties to determine Defendants' ability to pay, commencing after entry of this Order, and not subject to time periods, notice provisions, and other requirements of Rules 26, 30, 31, 33, 34, and 45 of the Federal Rules of Civil Procedure.  Any discovery taken pursuant to this Section is in addition to discovery previously authorized by this Court.  Such discovery shall conclude within twelve (12) months of the date of entry of this Order and include one deposition, not to exceed seven hours, before a magistrate, of each Defendant.  The magistrate may extend the deposition for cause.  Plaintiffs and Defendants shall cooperate and coordinate with the Bankruptcy Trustee of the Estate of DEI, LLLP; Dalbey Education Institute, LLC; and IPME, LLLP, in the Bankruptcy Court of the District of Colorado to avoid duplicative discovery.  *Provided, however*, that Plaintiffs may, for good cause, obtain an extension or modification of the discovery limitations set out above upon a showing that Defendants' failure to cooperate or otherwise comply with Subparagraph 8 below has unreasonably delayed or hindered the discovery.  *Provided, further*, that nothing in this Order shall prevent the Court, for good cause, from issuing an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

14

6.      Repatriation and Accounting of Assets

a)      Defendants shall immediately upon entry of this Order, or as soon as relevant banking hours permit, transfer to the territory of the United States to an escrow account held by undersigned defense counsel all funds and assets in foreign countries:  (1) held by either or both Defendants; (2) held by any person or entity for the benefit of either or both Defendants; (3) under the direct or indirect control of either or both Defendant(s); or (4) placed in trust by either or both Defendants for themselves or another.  Funds deposited in the escrow account shall not be released except for the purpose of transferring the funds to Plaintiffs, in accordance with Plaintiffs' instructions.

b)      Defendants shall, within five (5) business days of entry of this Order, each provide the Commission with a full accounting, verified under oath and accurate as of the date of this Order, of all funds, documents, and assets outside of the United States that are:  (1) titled in either or both Defendants' name; or (2) held by any person or entity for the benefit of either or both Defendants; (3) under direct or indirect control of either or both Defendants; or (4) placed in trust by either or both Defendants for themselves or another.  Such accounting shall include the addresses and names of any foreign or domestic financial institution or other entity holding the documents and assets, along with the account numbers and balances; and

15

c)      Defendants shall hold and retain all such documents and assets and prevent any transfer, disposition, or dissipation whatsoever of any such documents or assets for the duration of the asset discovery period and through full payment of the maximum ability to pay amount, except as necessary to execute such payment.

7.      Non-Interference with Repatriation

For the duration of the asset discovery period and through full payment of the maximum ability to pay amount, except as necessary to execute such payment, Defendants are restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Subparagraph 6, including:

a)      Sending any statement, letter, facsimile, e-mail or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that assets have been fully repatriated pursuant to the preceding Subparagraph 6 of this Order; and

b)      Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time as assets have been fully repatriated pursuant to the preceding Subparagraph 6 of this Order.

16

8.      Defendants shall cooperate fully with Plaintiffs regarding discovery of their maximum ability to pay amount, including cooperating as may be reasonably necessary to conduct discovery with third parties.  Defendants shall take all necessary actions as are available to them to bring assets under their control.  Defendants waive any marital privilege between them as to the discovery of their maximum ability to pay amount. Defendants shall not assert the attorney-client privilege to the extent that such an assertion would impede discovery of acts taken by attorneys or their agents on behalf of or at the direction of Defendants with respect to the location, disposition, protection, or dissipation of Defendants' assets.

9.      Asset Preservation and Accounting

For the duration of the asset discovery period and through full payment of the maximum ability to pay amount as set out at Subparagraph 2 above:

a)      Defendants, their agents, servants, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly selling, transferring, alienating, liquidating, encumbering, pledging, loaning, assigning, concealing, dissipating, converting, withdrawing, or making any other disposition of any assets or any interest therein, wherever located, including any assets outside the territorial United States, that are owned, controlled or held by, or for the benefit of, in whole or in part, Defendants, or in the actual or constructive possession of Defendants, other than those assets that

are used for actual, ordinary, and necessary business or living expenses that

Defendants reasonably incur.

b)      Notwithstanding Subparagraph 9(a) above, Defendants may withdraw,

transfer, encumber, or otherwise dissipate assets in excess of five-thousand

dollars ($5,000) per calendar month only with prior written agreement by

counsel for Plaintiffs, or prior approval by the Court.  Such withdrawal, transfer,

encumbrance, or other dissipation of assets shall come first from any income or

other asset acquired after the date of entry of this Order.

c)      Notwithstanding Subparagraph 9(a) and (b) above, Defendants may

transfer funds sufficient to pay ongoing and reasonable attorney's fees and costs

and other professional and administrative costs incurred in complying with

Section V of this Order.  *Provided, however*, that all such transfers are subject to

the accounting and other requirements of Subparagraph 9(f) below.  *Provided,*

*further, however*, that Defendants shall identify each law firm or person

possessing a retainer or advance fee deposit on their behalf, and the amount of

such retainer or deposit, within five (5) business days of entry of this Order.

d)      Defendants, their agents, servants, and employees, and all other persons in

active concert or participation with any of them, who receive actual notice of this

Order by personal service or otherwise, are restrained and enjoined from

concealing (or attempting to conceal) assets, or moving (or attempting to move)

assets outside the territory of the United States.  No activities or transactions in

18

violation of this Subsection, or arising from or involving any violation of this Subsection, shall be considered to be actual, ordinary, and necessary business or living expenses.

e)      The assets affected by this Section shall include both existing assets and assets acquired after entry of this Order.

f)      Defendants shall create and maintain an accounting of:  (1) any and all income, including through wages, commissions, interest, dividends, gifts, loans, or any other transfer of assets to them or for their benefit; and (2) any and all withdrawals, transfers, encumbrances, or other dissipation of assets for actual, ordinary, and necessary living expenses in excess of $500 and all actual, ordinary, and necessary business expenses, including attorney's fees and other professional and administrative costs incurred in complying with Section V of this Order.  Defendants shall provide this accounting to counsel for Plaintiffs for each calendar month, no later than the fifth (5th) business day after the end of the thirty (30) day period that the accounting covers.

(1)      Such accounting of actual, ordinary, and necessary business expenses shall include any drawing on retainers or deposits, for attorney's fees and costs.

(2)      Such accounting of actual, ordinary, and necessary business expenses shall include detail sufficient to assess the reasonableness of the fees and costs.

19

(3)      *Provided, however*, that the Plaintiffs may ask the Court to enjoin

or order the reversal of any payment of attorney's fees or costs and other

professional and administrative costs if the Plaintiffs determine such fees

or costs to be unreasonable.  The Court, upon such motion, shall enjoin

such payments or order the reversal of such payments if the Court

determines the fees or costs to be unreasonable.

B.      Plaintiffs' agreement to suspend the remainder of the judgment following Defendants'

compliance with Paragraph A of this Section is premised upon the truthfulness, accuracy, and

completeness of Defendants' financial disclosures, cooperation, and testimony during the asset

discovery period.

1.      The suspension of the judgment will be lifted as to any Defendant if, upon motion

by either or both Plantiffs, the Court finds that Defendant failed to disclose any material

asset, materially misstated the value of any asset, or made any other material

misstatement or omission in their financial statements or during asset discovery.

2.      If the suspension of the judgment is lifted, the judgment becomes immediately

due as to that Defendant in the amount of Three-Hundred-Thirty Million, Eighty-Four

Thousand, Three-Hundred-Fifty-Four Dollars, and Seventy Cents ($330,084,354.70),

which the parties stipulate only for purposes of this Section represents the consumer

injury and disgorgement alleged in the Complaint, less any payment previously made

pursuant to this Section, plus interest computed from the date of entry of this Order.

C.     Redress

1.     All funds paid to the State of Colorado pursuant to this Order and any interest thereon shall be held by the Colorado Attorney General's Office in trust to be used, first, for reimbursement of the actual costs and attorneys' fees incurred by the Colorado Attorney General's Office in this matter and, second, for future consumer education, consumer protection, or antitrust enforcement efforts.

2.     All funds paid to the Commission pursuant to this Order shall be deposited into an account administered by the Commission or its agents to be used for equitable relief, including consumer redress, and any attendant expenses for the administration of such equitable relief.  In the event that direct redress to consumers is wholly or partially impracticable or funds remain after the redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement.

3.     Defendants shall not challenge Plaintiffs' choice of remedies under subparagraphs 1 and 2 of this Subparagraph C.  Defendants shall not contest the manner of distribution chosen by Plaintiffs.  No portion of any payment under the judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment.

4.     Defendants shall, no later than twenty (20) days after the date of entry of this Order, provide sufficient information to enable the Commission to efficiently administer

21

redress.  Defendants shall provide to Commission counsel of record in this matter a Customer List of all customers who purchased from DEI, LLLP, Dalbey Education Institute, LLC;or IPME, LLLP, any products, programs, or services relating to the finding, listing, brokering, or earning income from promissory notes, on or after January 1, 2006, through the date of entry of this Order to the extent such information has not already been produced in discovery.

In compiling the Customer List, Defendants shall conduct a diligent search of records in their possession, custody, or control, including computer files, sales records, invoices, complaints, and correspondence.  The Customer List shall be encrypted and delivered using an overnight courier service.  Defendants shall separately and contemporaneously provide the passwords to unencrypt the list.  Along with the Customer List, Defendants shall specify the version of the program used and shall swear under penalty of perjury that the list is true, accurate, and complete.

D.    Other Monetary Provisions

1.    Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

2.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by Plaintiffs, including in a proceeding to enforce their rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

22

3.      The facts alleged in the Complaint establish all elements necessary to sustain an

action by Plaintiffs pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C.

§ 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

## VI.      CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, their agents, servants, and employees, and

all other persons in active concert or participation with any of them, who receive actual notice of

this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      Failing to provide sufficient customer information to enable the Commission to

efficiently administer consumer redress pursuant to Section V above.  If Plaintiffs request in

writing any information related to redress, Defendants shall make reasonable efforts to provide

it, in the form prescribed by Plaintiffs, within ten (10) business days.

B.      Disclosing, using, or benefitting from customer information, including the name, address,

telephone number, email address, Social Security number, other identifying information, or any

data that enable access to a customer's account (including a credit card, bank account, or other

financial account), that either or both Defendants obtained prior to entry of this Order in

connection with DEI, LLLP; Dalbey Education Institute, LLC; or IPME, LLLP; and

C.      Failing to destroy such customer information in all forms in their possession, custody, or

control within thirty (30) days after receipt of written direction to do so from a representative of

the Commission.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VII.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within five (5) business days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For five (5) years after entry of this Order, each Defendant, for any business that such Defendant, individually or with the other Defendant, is the majority owner or controls directly or indirectly, must deliver a copy of this Order  to:  (1) all principals, officers, directors, and LLC or LLLP managers and members; (2) all employees, agents, and representatives who participate in advertising, marketing, promoting, offering for sale, or selling any product, program or service; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

# VIII.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Defendant must submit to the Commission and the State of Colorado a compliance report, sworn under penalty of perjury:

1.      Each Defendant must:  (a) identify a primary physical, postal, and email address and telephone number, as designated points of contact of that Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business identified in the preceding part(b), including the products, services, and programs offered, the means of advertising, marketing, and sales; (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, each  Defendant must:  (a) identify all of Defendant's telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all Defendant's business activities, including any business for which such Defendant performs services whether as an employee or otherwise, and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For seven (7) years after entry of this Order, each Defendant must submit to the

Commission and the State of Colorado a compliance notice, sworn under penalty of perjury,

within ten (10) business days of any change in the following:

1.     Each Defendant must report any change in:  (a) any designated point of contact

identified in VIII.A above; or (b) the structure of any entity that the Defendant has any

ownership interest in or controls directly or indirectly that may affect compliance

obligations arising under this Order, including:  creation, merger, sale, or dissolution of

the entity or any subsidiary, parent, or affiliate that engages in any acts or practices

subject to this Order.

2.     Additionally, each Defendant must report any change in:  (a) name, including

aliases or fictitious names, or residence address; or (b) title or role in any business

activity, including any business for which such Defendant performs services whether as

an employee or otherwise, and any entity in which such Defendant has any ownership

interest, and identify the name, physical address, and any Internet address of the business

or entity.

## IX.    RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for seven (7)

years after entry of the Order, and retain each such record for five (5) years.  Specifically, each

Defendant for any business that such Defendant, individually or collectively with the other

Defendant, is a majority owner or controls directly or indirectly, must create and retain the

following records:

A.      Accounting records showing the revenues from all products, services, or programs sold;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission and the State of Colorado; and

E.      A copy of each unique advertisement or other marketing material.

## X.      COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended pursuant to Section V and any failure to transfer any assets as required by this Order:

A.      Within ten (10) business days of receipt of a written request from a representative of the Commission or the State of Colorado, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and the State of Colorado also are authorized to obtain discovery, without further leave of Court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.       For matters concerning this Order, the Commission and the State of Colorado are authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Commission and the State of Colorado to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.       The Commission and the State of Colorado may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1 or the State of Colorado's lawful use of compulsory process, pursuant to COLO. REV. STAT. §§ 6-1-109.

## XI.     RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

DATED this 17th day of July, 2013.

BY THE COURT:

R. Brooke Jackson
United States District Judge

28

**SO STIPULATED AND AGREED:**

For the Plaintiffs:

David P. Frankel, Esquire   (Date)
Alysa S. Bernstein, Esquire
Michelle R. Rosenthal, Esquire
James A. Trilling, Esquire
Elizabeth Tucci, Esquire
Federal Trade Commission
600 Pennsylvania Avenue, NW
Room NJ-3212
Washington, DC 20580
Tel. (202) 326-2812, 3289, 3335, 3497
Fax (202) 326-3259
dfrankel@ftc.gov
abernstein@ftc.gov
mrosenthal@ftc.gov
jtrilling@ftc.gov
etucci@ftc.gov

Attorneys for Plaintiff Federal Trade Commission

Jay B. Simonson, Esquire   (Date)
Office of the Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, Seventh Floor
Denver, Colorado 80203
Tel. (720) 508-6205
Fax (720) 508-6040
jay.simonson@state.co.us

Attorney for Plaintiff State of Colorado

29

For the Defendants:

_____ 5/21/13
Paul Richard Brown, Esquire   (Date)
Thomas D. Adams, Esquire
J. Dino Vasquez, Esquire
Mark A. Bailey, Esquire
Karr Tuttle Campbell
701 Fifth Avenue, Suite 3300
Seattle, Washington 98101
Tel. (206) 224-8073, 8026, 8023, 8050
Fax (206) 682-7100
pbrown@karrtuttle.com
tadams@karrtuttle.com
dvasquez@karrtuttle.com
mbailey@karrtuttle.com

Attorneys for Defendants
Russell and Catherine Dalbey

_____ 5/21/13
Kenzo S. Kawanabe, Esquire   (Date)
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, Colorado 80202-1500
Tel. (303) 892-7541, 7493
Fax (303) 893-1379
kenzo.kawanabe@dgslaw.com

_____ for E. Glynn
Edward Glynn, Esquire   (Date)   5/21/13
Manatt, Phelps & Phillips, LLP
700 12th St. NW, Ste. 1100
Washington, DC 20005-4075
Tel. (202) 585-6500
Fax (202) 585-6600
eglynn@manatt.com

Attorneys for Defendants
Russell and Catherine Dalbey

By the Defendants:

_____ 5/20/13
Russell T. Dalbey   (Date)

_____ 5/20/13
Catherine L. Dalbey   (Date)

30